**FILED**
**Nov 30, 2023**
**11:58 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **BARRY BRAY,** | ) | **Docket No. 2022-07-0683** |
| **Employee,** | ) | |
| **v.** | ) | |
| **CECO DOOR PRODUCTS,** | ) | **State File No. 33665-2021** |
| **Employer,** | ) | |
| **And** | ) | |
| **TRAVELERS INDEMNITY CO.,** | ) | **Judge Amber E. Luttrell** |
| **Carrier.** | ) | |

---

## COMPENSATION ORDER

---

The Court held a compensation hearing on Mr. Bray's request for benefits for a hearing loss injury. At issue is the admissibility of Dr. Karl Studtmann's thirty-two percent impairment rating and the extent of Mr. Bray's permanent impairment. For the reasons below, the Court excludes the thirty-two percent rating and holds that Mr. Bray is entitled to seven percent permanent partial disability.

### Claim History

Mr. Bray, a forty-year employee of Ceco, alleged hearing loss in both ears. He testified that Ceco is a loud environment and he struggled with declining hearing for the last four to five years. Ceco tested Mr. Bray's hearing in 2021 and told him he had significant hearing loss. After the testing, Mr. Bray tested on his own and obtained hearing aids.

Ceco reimbursed Mr. Bray for his hearing aids and offered a panel of physicians, from which he selected Dr. Mitchell Schwaber.

Dr. Schwaber testified that Mr. Bray gave a history of hearing loss over the last few years before he saw him. He specifically reported difficulties understanding speech in noisy environments with background noise. Mr. Bray told Dr. Schwaber about his work exposure to grinding and cutting sounds created by metal presses and other factory machinery. He also reported ringing in both ears that caused "insomnia, psychological difficulty, and maybe some anxiety."

1

Dr. Schwaber ordered an audiogram and diagnosed noise-induced mild sloping to severe sensorineural hearing loss and tinnitus in both ears and tinnitus. Dr. Schwaber recommended Mr. Bray use noise protection at work, undergo an exam every two years, and purchase new hearing aids every four years. He placed Mr. Bray at maximum medical improvement on November 29, 2021.

As for impairment, Dr. Schwaber used the sixth edition of the AMA Guides and assigned a seven percent impairment. To calculate the impairment, Dr. Schwaber testified that he averaged Mr. Bray's audiogram results at the 500, 1000, 2000, and 3000-frequency levels and inserted the figure into a formula that gave a binaural impairment. He then added an additional two percent for tinnitus and converted it to a seven percent rating.

He testified that his rating is consistent with the directives of the Guides and that the method used in the Guides is "relied on in the Tennessee medical community . . . and in medical communities outside of Tennessee." He further stated that, based on his research in the ENT medical field, the Guides method is "used and relied on by the majority of other physicians to assess permanent impairment for hearing loss."

After his visit with Dr. Schwaber, Mr. Bray saw Dr. Karl Studtmann for an independent medical evaluation.

Dr. Studtmann testified that he obtained an audiogram, and its results were "very similar" to the one ordered by Dr. Schwaber. He stated that both tests showed "hearing loss [that] is worse at higher frequencies." He further explained that Mr. Bray's low-frequency hearing at 500 hertz was "close to normal," but around 8,000 hertz, his loss was "severe to profound." Regarding impairment, Dr. Studtmann testified that, based on his audiogram results, Mr. Bray's impairment rating under the Guides is ten-percent.

However, Dr. Studtmann contended that the AMA Guides methodology is insufficient to measure the impairment suffered by Mr. Bray for his hearing loss. He explained that the Guides are "heavily weighted toward low-frequency hearing loss" and do not give any method to evaluate high-frequency hearing loss at levels above 3,000 hertz, when an audiogram tests up to 8,000 hertz. In other words, the Guides does not consider any of the high frequency sounds where Mr. Bray's hearing was worst.

Because he disagreed with the Guides method, Dr. Studtmann used his own method to evaluate Mr. Bray's impairment. He testified that functionally, Mr. Bray sustained a thirty-two percent impairment. To calculate this impairment, he took "the most severe level of hearing loss and use[d] a flat line at that level."

He explained that he took Mr. Bray's audiogram results for the lower frequency levels and altered them to Mr. Bray's most severe hearing loss level, which he called a "flat line rating." He stated that the hearing in both ears was worst at the high-frequency (8,000 hertz) level, so he "moved all of the other frequency levels up to where the 8000 was for

2

the flat line." He acknowledged that "if you looked at the actual levels from the audiogram for the [lower-frequency] levels, those would indicate a lesser degree of hearing loss."

Dr. Studtmann testified that his methodology is supported by a peer-reviewed article authored by "Hornsby and Ricketts," where "they look at the functional impairment that's caused by high-frequency hearing loss." He acknowledged that the article does not address the methodology he used for calculating impairment. He further testified that "articles, in general, support the idea that high-frequency hearing loss dramatically affects understanding." He later generally referenced nineteen other articles that he contended supported his opinion.

He stated that he has not published any articles regarding his method for assigning impairment and does not know if anyone has published this method. He did not know if his method has been peer-reviewed and could not name another medical group or association that uses it to assign hearing loss impairment.

Dr. Schwaber disagreed with Dr. Studtmann's methodology for several reasons. Dr. Studtmann's method does not follow Guides directives; his method has not been tested or peer-reviewed for validity; and it "eliminates the effect of low frequency in terms of the ability to hear." Dr. Schwaber cited a recent Harvard article, which shows how the 2000-hertz level is "very important in your ability to converse or . . . understand speech." He said that speech frequencies are mostly between the 1000- and 4000-hertz level, which the Guides include.

He further testified that Dr. Studtmann's methodology is not accepted or used in the medical community for assigning impairment. Also, compared to the Guides method, Dr. Studtmann's method gives "an inflated value, so it's not accurate." Lastly, Dr. Schwaber pointed out that under the Guides, the maximum impairment rating for a completely deaf person is thirty-five percent. Dr. Schwaber stated that Mr. Bray is not near completely deaf as the thirty-two percent rating suggests.

Dr. Schwaber also addressed the articles relied on by Dr. Studtmann. He stated that the Hornsby and Ricketts article did not discuss assigning permanent impairment for hearing loss. Instead, it covered how hearing aids should be programmed. As for the nineteen other articles, they do not support Dr. Studtmann's rating method or suggest that it has been accepted in the medical community.

Dr. Schwaber agreed that Mr. Bray's greatest hearing loss was at frequencies equal to and higher than the 4000-hertz range, which means he has difficulty hearing certain sounds or understanding some noises or sounds. He also stated that the Guides "underestimates slightly the impairment." However, he maintained that Dr. Studtmann's method "seriously overestimates the impairment."

Mr. Bray testified he still works for Ceco. He cannot wear his hearing aids at work because he wears rubber ear plugs, so he struggles to communicate with coworkers.

Outside of work, he has trouble hearing his wife, grandchildren, and the television. He coaches middle school football and cannot hear the team. He described difficulty hearing in crowds because his hearing aids pick up background noise. Finally, his tinnitus continues.[1]

## Findings of Fact and Conclusions of Law

Mr. Bray must prove all elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2023).

*Motion to Exclude Rating*

At the hearing, the parties argued Ceco's motion to exclude Dr. Studtmann's thirty-two percent rating under Tennessee Code Annotated section 50-6-204(k)(2)( C). It states,

> No impairment rating . . . shall be . . . admissible into evidence at the trial of a workers' compensation claim unless the impairment rating is *based on the applicable edition of the AMA Guides or, in cases not covered by the AMA Guides, an impairment rating by any* **appropriate method used and accepted by the medical community**.

(Emphasis added).

Based on the medical testimony, Ceco argued that Dr. Studtmann's thirty-two percent rating is inadmissible because the Guides include a method of determining impairment for hearing loss up to 3000 hertz, which Dr. Schwaber testified covers most speech frequencies. For those losses in higher frequencies not covered by the Guides, Ceco contended that the proof showed Dr. Studtmann's rating method is not appropriate, or accepted or used by the medical community. The Court agrees.

Dr. Schwaber testified that Mr. Bray's greatest hearing loss was at the 4000-hertz and higher ranges and acknowledged that the Guides method slightly underestimates the impairment. However, the Court finds instructive the Harvard article Dr. Schwaber cited, which showed the 2000-hertz level is very important in conversational speech. Further, most speech frequencies are between the 1000- and 4000-hertz levels, which the Guides covers.

Dr. Schwaber persuasively testified that Dr. Studtmann's method is inappropriate because, in part, it "seriously overestimates the impairment." This methodology artificially altered the better results of Mr. Bray's lower-frequency testing to equal his worst results at the 8000-hertz level to create the "flat line." In other words, Mr. Bray's actual audiogram levels in the lower frequencies, where much conversational speech occurs, were not considered in rating his hearing loss.

---

[1] As for other lay witnesses, Mrs. Bray testified consistently with Mr. Bray regarding his difficulty hearing at home with family. Scott Martin, Ceco's director of environmental health and safety, testified that Mr. Bray has continued to perform his work without any accommodations.

The totality of the evidence does not show that Dr. Studtmann's method is accepted or used by the medical community. Dr. Studtmann primarily relied on an article by "Hornsby and Ricketts," which he contended discusses functional impairment caused by high-frequency loss. He also generally referenced nineteen other articles, which he stated support the idea that higher frequency loss affects understanding of speech.

However, Dr. Schwaber reviewed all of these articles and testified unequivocally that they do not support Dr. Studtmann's method. In fact, he and Dr. Studtmann agreed that the Hornsby and Ricketts article focused on programming hearing aids and not the assignment of impairment ratings for hearing loss. As for the other articles, Dr. Schwaber stated they do not discuss Dr. Studtmann's method or say that it has been used or accepted in the medical community.

Further, Dr. Studtmann acknowledged that he has not published his method, it has not been tested or peer reviewed, and he knows of no other physician or association that use his method.[2]

Here, the Court finds that Dr. Studtmann's flat line rating method is neither appropriate nor accepted or used by the medical community. Therefore, his thirty-two percent rating is not admissible.

*Permanent partial disability*

While perhaps imperfect, the Guides offers a method for assigning impairment for hearing loss for most conversational speech. Both Drs. Schwaber and Studtmann assigned ratings under the Guides using Mr. Bray's audiogram results. Dr. Schwaber assigned a seven-percent rating, and Dr. Studtmann assigned ten percent. As the authorized treating physician, Dr. Schwaber's rating is rebuttably presumed correct. Tenn. Code Ann. § 50-6-204(k)(7).

Dr. Studtmann's testimony focused on his adopted methodology for assigning impairment rather than why his ten percent rating under the Guides was more persuasive than Dr. Schwaber's rating. Thus, the Court finds his testimony merely differed from Dr. Schwaber's and is insufficient to overcome the presumption of correctness afforded to Dr. Schwaber.

Based on Dr. Schwaber's seven-percent rating, Mr. Bray is entitled to an original award of 31.5 weeks at the compensation rate of $979.34, or $30,849.21. Mr. Bray has returned to work for Ceco and is not entitled to increased benefits.

---

[2] While this issue can be decided on the factual proof alone, notably, recent caselaw casts doubt on the method's use and acceptance in the medical community. *See Garner v. Goodyear Tire & Rubber Co.,* No. W2020-00280-SC-R3-WC, 2021 Tenn. LEXIS 63, at *19 (Tenn. Workers' Comp. Panel Mar. 19, 2021) (The Tennessee Supreme Court has not "formally and universally adopted the flat line method for all high frequency hearing loss cases.").

*Costs*

After the hearing, Mr. Bray filed a motion requesting the following discretionary costs: 1) Dr. Studtmann's deposition fee, $750.00; 2) Dr. Studtmann's court reporter fee, $384.10; and 3) Mr. Bray's deposition transcript fee, $113.50. Mr. Bray argues that these expenses were accurate, reasonable, necessary for trial preparation, and are recoverable under Tennessee Rule of Civil Procedure 54.04(2).

That rule allows recovery of reasonable and necessary "court reporter expenses for depositions" and "expert witness fees for depositions." Further, section 50-6-239(c)(8) authorizes a trial court to "assess discretionary costs including reasonable fees for depositions of medical experts against the employer upon adjudication of the employee's claim as compensable."

Ceco opposed the request for costs associated with Dr. Studtmann's testimony if the Court awarded benefits based on Dr. Schwaber's rating.

Here, the parties presented a legitimate dispute regarding the method for rating hearing loss given that Mr. Bray's greatest losses were at levels not covered by the Guides. To resolve the dispute, the Court thoroughly considered the testimony of *both* physicians; thus, he is entitled to the requested costs. The Court finds the costs were reasonable and necessary, and in its discretion, holds Ceco shall pay costs of $1,247.60.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ceco Door shall pay Mr. Bray a lump-sum award of permanent partial disability benefits equal to seven percent permanent partial disability for 31.5 weeks, or $30,849.21.

2. Mr. Bray's attorney is entitled to a twenty-percent fee of the award under Tennessee Code Annotated section 50-6-226(a)(1).

3. Ceco Door shall pay Mr. Bray's discretionary costs of $1,247.60.

4. Ceco Door shall pay future medical benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A).

5. The $150.00 filing fee is taxed to Ceco Door, to be paid to the Court Clerk under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (February, 2022) within five business days, and for which execution might issue if necessary.

6. Ceco Door shall prepare and file a statistical data form within ten business days of the date of this order under Tennessee Code Annotated section 50-6-224.

7. Unless appealed, this order shall become final thirty days after issuance.

**ENTERED November 30, 2023.**

*Amber E. Luttrell*
**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

**Appendix**

Exhibits
1. Dr. Karl Studtmann's deposition
2. Dr. Mitchell Schwaber's deposition
3. Employee's Choice of Physicians

Technical Record
1. Petition for Benefit Determination
2. Dispute Certification Notice and statement of additional issues
3. Request for Scheduling Hearing
4. Scheduling Order
5. Employer's Motion to Exclude Rating
6. Employee's Response to Motion
7. Employer's Reply to Employee's Response to Motion
8. Dispute Certification Notice (post-discovery)
9. Joint Pre-Compensation Hearing Statement
10. Employer's Pre-Trial Brief
11. Employee's Witness and Exhibit List
12. Employer's Exhibit List
13. Employer's Witness List
14. Employee's post-trial motion to assess discretionary costs
15. Employer's post-trial objection to employee's motion to assess discretionary costs

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on November 30, 2023.

| Name | Email | Service sent to: |
|------|-------|------------------|
| Spencer Barnes, Employee's Attorney | X | spence@morrisonandbarnes.com<br>kaylie@morrisonandbarnes.com |
| J.V. Thompson, Employer's Attorney | X | jthompson@raineykizer.com<br>ahollingsworth@raineykizer.com |

_____
**Penny Shrum, Court Clerk**
Court of Workers' Compensation Claims



**NOTICE OF APPEAL**
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____        ☐ Motion Order filed on _____

☐ Compensation Order filed on_____        ☐ Other Order filed on_____

issued by Judge _____.

**Statement of the Issues on Appeal**
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

**Parties**
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.


_____
*[Signature of appellant or attorney for appellant]*